UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JENNIFER LEE ABBETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-232-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Jennifer Lee Abbett seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her disability and disability insurance benefits as well as supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her Social Security benefits and erred by failing to utilize the correct analysis for terminating previously awarded benefits, failing to properly develop the record in light of the Plaintiff's non-attorney representation, and failing to adequately develop a logical bridge from the evidence to the Plaintiff's residual functional capacity.

**BACKGROUND**

On October 31, 2009, the Plaintiff was awarded disability benefits beginning in August 2009. (R. 285.) By letter dated January 18, 2013, the Commissioner notified the Plaintiff that she had not properly returned requested information. (R. 284.) The letter informed the Plaintiff that she had until January 2014 to submit the requested application, and if the Plaintiff failed to do so, she would have to file a new application if she wanted her benefits to resume. (*Id.*) The

Commissioner ceased remitting benefits to the Plaintiff as of August 1, 2013, finding that she was no longer disabled as of May 2013. (R. 170.) The Plaintiff did not appeal this decision.

Rather, on October 8, 2013, the Plaintiff filed a Title II application for disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, again alleging disability beginning February 25, 2009. (R. 16.) She later amended her alleged onset date to May 13, 2013. (R. 297.) Her claims were denied initially on December 9, 2013, and upon reconsideration on February 20, 2014. (*Id.*) On September 10, 2015, the Plaintiff appeared with a non-attorney representative and testified at a video hearing before an administrative law judge (ALJ). (*Id.*) Thomas A. Gusloff, an impartial vocational expert (VE), also appeared. (*Id.*) On March 28, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–4.)

On May 29, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## ANALYSIS

### A. Whether an Eight-Step Inquiry Was Necessary

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Generally, an ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under §§ 404.1520(c), 416.920(c). Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," §§ 404.1520(a)(4)(iv), 416.920(A)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." §§ 404.1520(a)(4)(v). 416.920(a)(4)(v).

However, in the case of cessation of benefits that were previously awarded to a claimant, an ALJ must instead conduct an eight-step inquiry, although this inquiry incorporates the familiar five-step approach described above. 42 U.S.C. § 423(f). In step one, the ALJ must determine if the claimant is engaged in SGA. If so, the claimant is not disabled. At step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under §§ 404.1520(c) and 416.920(c). Step three requires the ALJ to determine whether medical improvement has occurred. If so, step four requires the ALJ to determine whether the medical improvement is related to the claimant's ability to work. In step five, the

ALJ determines whether an exception under 20 C.F.R. § 404.1594(d) or (e) applies. In step six, if the ALJ has determined that the medical improvement is related to the claimant's ability to work, the ALJ then determines whether the claimant's current impairments in combination are severe. If so, in step seven, the ALJ assesses the claimant's RFC. Finally, in step eight, the ALJ determines whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience."

The Plaintiff's first and second assignments of error are premised on her assertion that the ALJ should have analyzed her case as a cessation of benefits rather than a new application for benefits. The Court disagrees with her premise. By letter dated May 8, 2013, the Plaintiff was advised of the Commissioner's determination that she was no longer disabled. In that same letter, the Plaintiff was advised that she had sixty days within which to appeal the Commissioner's decision or she would have to file a new application. (R. 170.) She did not appeal within that time frame. Rather, she filed new applications on October 8, 2013, well beyond the sixty-day period, and amended her alleged onset date to a point in time after the Commissioner's determination that she was no longer disabled. In *Truelove v. Berryhill*, the plaintiff argued that "the ALJ erred in not conducting the eight-step improvement analysis for the continuing disability benefits period." No. 1:17cv265, 2018 WL 1376705, at *4 (N.D. Ind. Mar. 19, 2018). The court rejected the plaintiff's argument, finding that "[a]t issue before the ALJ was the SSI application the Plaintiff filed in 2013—not an appeal of the disability cessation." *Id*.; *see also White v. Sullivan*, 901 F.2d 94, 95–96 (8th Cir. 1990) (finding no jurisdiction to review termination decision when ALJ did not reopen it during proceedings as to a subsequent application for benefits). So too here. There is no indication that the ALJ re-opened the cessation determination. Instead, what was before the ALJ was the Plaintiff's new applications. Therefore,

4

the Court cannot say that the ALJ should have used the eight-step framework for the cessation of benefits.

The Plaintiff asserts that the ALJ should have noted, and explored, the illogical amended onset date. Specifically, the Plaintiff asserts that it does not make sense that she would allege an onset date of May 13, 2013, when she had already been determined to be disabled through August 2013. This is not an accurate representation of the record. The Commissioner advised the Plaintiff that she would receive payments through August 2013, but explicitly determined that the Plaintiff was no longer disabled as of May 2013. Contrary to the Plaintiff's argument, this does not amount to a determination that the Plaintiff was found to be disabled through August 2013. Thus, the Court finds nothing illogical about the Plaintiff's amended alleged onset date and, in fact, finds it to be entirely consistent with the procedural history of this case.

The Plaintiff further asserts that her amendment to her alleged onset date was ineffective because she was represented by a non-attorney representative and therefore could not have made an intelligent decision regarding the amendment. Specifically, the Plaintiff asserts that, due to her non-attorney representative, she did not understand that she was waiving her rights to have her applications evaluated under the more comprehensive, eight-step framework rather than the five-step framework. But, as the Court has already determined, the Plaintiff would not have been entitled to the eight-step framework in the first place, regardless of her alleged onset date. *See Anderson v. Heckler*, 805 F.2d 801, 804–05 (8th Cir. 1986) (finding that it was the subsequent application for benefits that was before the court, not the cessation of benefits, even where the plaintiff alleged the same onset date).

The Plaintiff also asserts that she never had a hearing as to the cessation of benefits as contemplated by statute. Under 42 U.S.C. § 405:

> In any case in which the person [receiving payments] fails to submit a report required by the Commissioner of Social Security under subparagraph (A) or (E), the Commissioner may, after furnishing notice to such person and the individual entitled to such payment, require that such person appear in person at a field office of the Social Security Administration serving the area in which the individual resides in order to receive such payments.

42 U.S.C. § 405(F). However, the Plaintiff failed to appeal the cessation of benefits within the sixty-day time frame and cannot now make this argument for the first time on appeal to the district court. *See Agelonidis v. Chater*, No. 95 C 78, 1996 WL 145763, at *2 (N.D. Ill. Mar. 26, 1996) (noting that the ALJ declined to consider issue related to the cessation of benefits because "insomuch as the claimant did not timely pursue the cessation matter . . . , he has no right to appeal [it]); *see also James v. Comm'r of Soc. Sec.*, No. 3:15-CV-61, 2016 WL 3167254, at *5 (W.D. Ky. June 6, 2016) (finding lack of subject matter jurisdiction related to cessation of benefits where plaintiff did not timely appeal the cessation determination); *Foster v. Colvin*, No. 4:15CV237, 2015 WL 8118130, at *2 (E.D. Ark. Nov. 12, 2015) (same); *Gadson v. Astrue*, No. 1:11cv1106, 2012 WL 28565, at *2 (E.D. Cal. Jan. 5, 2012) (same).

Thus, the Court finds no merit in any of the Plaintiff's arguments regarding whether the ALJ should have applied the eight-step framework applicable to cessation of benefits. The Court now turns to the ALJ's findings.

**B.     RFC Determination**

The Plaintiff argues that the ALJ erred by failing to build a logical bridge between the evidence and her conclusions regarding the Plaintiff's RFC. The Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of state-agency examiners and improperly held the Plaintiff's attempts to work against her credibility.

*1.	Standard of Review*

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address

every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## 2. *The ALJ's Findings*

At step one in the five-step framework under which the ALJ reviewed this case, the ALJ found that the Plaintiff has not engaged in SGA since her alleged onset date, May 13, 2013. (R. 18.) At step two, the ALJ determined that the Plaintiff had severe impairments of anxiety and depression. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (R. 19.) The ALJ also found that the Plaintiff's diabetes, rheumatoid arthritis, degenerative disease, and post-traumatic stress disorder (PTSD) were all non-severe. (*Id.*)

At step three, the ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and, at step four, that she had the RFC to perform a full range of work at all exertional levels, except:

> [T]he claimant is limited to occasional complex written and verbal communications, she can respond to usual work situations and to changes in a routine work setting, and she can occasionally interact with the public and supervisors.

(R. 21.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. (R. 16–26.) The ALJ evaluated the objective medical evidence and the

8

Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 22.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified that her ability to stand, walk, and concentrate were impaired. (R. 21–22.)

The ALJ turned to the objective medical evidence and found that the Plaintiff's medical records showed no severe physical impairments. (R. 22.) The ALJ noted that the Plaintiff's 2012 mental health treatment indicated she had only minor problems with social functioning and that she was discharged from mental health treatment for noncompliance. The Plaintiff received little to no mental health treatment in 2014. (*Id.*) The ALJ also looked to the Plaintiff's credibility regarding her symptoms and found that the Plaintiff could not be as limited as she alleged because, for example, the Plaintiff cared for family members, worked, attended school, and performed household chores. (R. 23.) Nor did the medical evidence support the severity of the limitations as claimed. (*Id.*)

The Plaintiff has past relevant work as an order selector, store laborer, and inspector hand packer. (R. 25.) The ALJ found that the Plaintiff was able to perform her past relevant work. (*Id.*) In the alternative, and relying on the VE's testimony, the ALJ found that there are "jobs available in the economy that the hypothetical individual could perform." (*Id.*), the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (*Id.*)

*3.     Logical Bridge*

First, the Court notes that Plaintiff misstates the burden of proof. She asserts that it is the Commissioner's burden of proof to show that impairments not included in her RFC did not exist or were substantially improved. While this may be true in the eight-step framework applicable to cessation of benefits, it is not true here. At step four, it is the Plaintiff's burden to come forward with evidence of her limitations. *See Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (noting that the claimant has the burden of proof as to the first four inquiries). The Plaintiff points to no evidence that she believes the ALJ should have taken into account but did not. She only argues in conclusory terms that even the state-agency consultants acknowledged her impairments. However, the Court finds no logical inconsistency between the reports to which the Plaintiff refers and the ALJ's conclusion regarding her RFC.

As to the Plaintiff's argument regarding the weight that the ALJ assigned to her work history, "[a]n ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

In this case, the ALJ discounted the Plaintiff's subjective testimony in part due to the fact that the Plaintiff continued to work after her alleged onset date. (R. 19, 22–24.) "An ALJ is not statutorily required to consider a claimant's work history, but a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal quotation omitted). However, at another point in the opinion, the ALJ notes that the Plaintiff's work history was inconsistent and was more indicative of an unwillingness, rather than an inability, to work. (R. 23.) Having found that the Plaintiff did not have a "good" work record, the ALJ did not need to substantially credit the Plaintiff's testimony. Further, the ALJ clearly articulated other reasons for her credibility determination, including the Plaintiff's daily living activities, medical history, self-reports of improvement, and conflicts between the Plaintiff's testimony and that of third-parties. Therefore, the Court cannot say that the ALJ's credibility determination was patently wrong and will not disturb it.

## CONCLUSION

Accordingly, the Court AFFIRMS the decision of the Commissioner that the Plaintiff is not disabled.

SO ORDERED on June 18, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT